UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
2019 OCT 17 PM 12: 45
US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

RONALDO GONZALES,

    Plaintiff,

Case No.: 6:19-cv-1985-ORL-78LRH

vs.

ORANGE COUNTY PUBLIC SCHOOLS, a
Political Subdivision of the State of Florida,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, RONALDO GONZALES ("Plaintiff"), by and through his undersigned attorneys, sues Defendant, ORANGE COUNTY PUBLIC SCHOOLS ("Defendant"), a Political Subdivision of the State of Florida, and in support thereof, alleges as follows:

### NATURE OF THE ACTION

1. This is an action against Defendant for damages pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.* ("Title VII") and the Florida Civil Rights Act of 1992, §760.01, *Florida Statutes, et seq.* ("FCRA") for discriminatory employment practices.

2. As alleged with greater particularity below, Defendant has engaged in unlawful national origin discrimination by failing to hire Plaintiff, a qualified male of Philippine national origin, without a legitimate non-discriminatory basis, while hiring lesser qualified candidates not having Philippine national origin for posted open positions Defendant was seeking to fill.

1

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000e(5)(f), and 28 U.S.C. §§1331 and 1343(a)(4).

4. The Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. §1367 because the state law claim alleged herein is so related to the federal claim alleged herein that they form part of the same case and controversy.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3), because the unlawful employment practices occurred in this District.

## PARTIES

6. Plaintiff is of Filipino national origin, an adult male resident of Ocoee, Orange County, Florida, who was born in in the Municipality of Amadeo, Province of Cavite, in the Republic of the Philippines, in 1956 to Iniego and Paulina Gonzales, native Filipino citizens.

7. Plaintiff grew up in the Republic of the Philippines where he attended elementary school and learned to speak his native language of Tagalog and also the English language, which he speaks with a discernable Tagalog "foreign" accent.

8. Plaintiff graduated in 1978 from the University of the East, an accredited private institution of higher education in the Republic of the Philippines, with a Bachelor of Science degree in Mechanical Engineering.

9. Prior to moving to the United States, Plaintiff was employed for several years, both in the Republic of the Philippines and the country of Kuwait, in the petrochemical industry.

10. Plaintiff lawfully immigrated to the United States in or about 1992.

11. Plaintiff became a naturalized U.S. citizen in or about 1995.

12. Defendant initially hired Plaintiff into its Operations and Maintenance Department as an hourly Technician responsible for maintenance tasks within public schools in or about 1998.

13. Plaintiff held various positions with Defendant during which time Defendant made willful and derogatory comments to Plaintiff, based upon Plaintiff's Filipino national origin, on a repetitive and ongoing basis, almost daily, for several years during the time Plaintiff was employed by Defendant.

14. Defendant laid Plaintiff off from employment in or about 2009 citing economic reasons.

15. Following said layoff, Plaintiff subsequently applied for four different open positions that Defendant has posted to the public for which for which Plaintiff was qualified, yet Defendant filled each position with lesser qualified candidates not having Filipino national origin, each of whom was Caucasian, denying Plaintiff equal employment opportunity because of Plaintiff's Filipino national origin.

16. Plaintiff is an employee as defined under 29 U.S.C. §630 and within the meaning of 42 U.S.C. §2000e(f).

17. Defendant is a public tax-supported entity charged with the operation, maintenance and administration of public schools within Orange County, Florida, with its principal place of business located at the district headquarters, Ronald Blocker Educational Leadership Center, 445 West Amelia Street, Orlando, Florida 32801 and is an employer within the meaning of 42 U.S.C. §2000e(b), 29 U.S.C. §630, and §760.02(7), *Florida Statutes* and has employed more than 15 employees at all times alleged herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. On or about March 24, 2014, Plaintiff executed and filed his original Charge of Discrimination ("Charge of Discrimination") against the Defendant on the basis of national origin discrimination with the U.S. Equal Opportunity Commission ("EEOC"), a copy of which is attached hereto as Exhibit "A."

19. On or about September 20, 2018, the EEOC issued a Letter of Determination that it found reasonable cause to believe that Defendant has discriminated against Plaintiff as charged and offered Defendant an opportunity to mediate the dispute which Defendant declined, a copy of which is attached hereto as Exhibit "B."

20. On or about July 19, 2019, the EEOC issued Plaintiff a Notice of Right to Sue Within 90 Days, a copy of which is attached hereto as Exhibit "C."

21. Plaintiff has completed all administrative prerequisites and has performed all conditions precedent prior to filing this action.

## STATEMENT OF FACTS

22. Plaintiff was born in the country of the Republic of the Philippines in 1956 to native Filipino parents.

23. Plaintiff self identifies himself as non-Caucasian of Filipino national origin having Austronesian descent within the Tagalog ethnic group.

24. Plaintiff learned to speak the native Tagalog language at an early age and later learned to speak the English language, which he does with a discernable Tagalog "foreign" accent.

25. Plaintiff attended the University of the East, located in the Republic of the Philippines 1978, where he was awarded the degree of Bachelor of Science in Mechanical Engineering in 1978.

26. Plaintiff initially applied his Mechanical Engineering degree within the petro-chemical industry in the Republic of the Philippines and later within the country of Kuwait where he was employed as a Mechanical Engineer by the Kuwait Ministry of Defense.

27. Plaintiff lawfully immigrated to the United States in or about October, 1992, following the invasion of Kuwait by the country of Iraq.

28. Plaintiff became a naturalized U.S. citizen in or about 1995.

29. Plaintiff was recognized as a Certified Plant Maintenance Manager by the Association for Facilities Engineering in or about 2011.

30. Defendant initially hired Plaintiff in or about 1998 into its Operations and Maintenance Department as a Building Services Technician, an hourly role, responsible for maintenance tasks within the public schools operated by Defendant within Orange County, Florida.

31. Defendant promoted Plaintiff in or about 2000 to the role of Planner, an hourly role, to plan maintenance work.

32. Defendant promoted Plaintiff in or about 2004 to the role of Craft Team - Supervisor, an exempt role, within the Operations and Maintenance Department.

33. Subsequent to Plaintiff's promotion to the role of Craft Team Supervisor, Plaintiff reported to the Senior Manager for Operations and Maintenance, Donald Hill, an agent and manager of Defendant, who in turn reported to Senior Facilities Director for Operations and Maintenance, James Surguine, an agent and manager of Defendant.

34. In his role of Senior Director for Operations and Maintenance, the said James Surguine, made hiring, termination and employment layoff decisions on behalf of Defendant.

35. In his role as Craft Team Supervisor, Plaintiff supervised some 20 employees and screened and recommended candidates for hire for open positions within the Operations and Maintenance Department.

36. During the years of his employment by Defendant, Plaintiff satisfactorily performed his responsibilities, even saving Defendant more than $1 million on a school roofing project, and was regularly awarded merit pay increases.

37. During the years of his employment by Defendant, Plaintiff's Filipino national origin became known to Defendant.

38. During the years of his employment by Defendant, Plaintiff's co-workers, including management personnel of Defendant, called Plaintiff such names as "Filipino Shorty", "Dog Eater" and "Filipino" on an ongoing and, nearly, daily basis which disparaged Plaintiff's Filipino national origin

39. During the years Plaintiff reported to Donald Hill, Plaintiff had nearly daily personal interactions with James Surguine, an agent and manager of Defendant, who is not of Filipino national origin, and Mr. Surguine would regularly and intentionally mock Plaintiff's Filipino national origin by regularly and intentionally mispronouncing Plaintiff's last name in the presence of Plaintiff, which he did on a nearly daily basis during the years Plaintiff was in the role of Craft Team Supervisor.

40. During the years Plaintiff had personal interactions with the said James Surguine, in his role as an agent and manager for Defendant, who is not of Filipino national origin, James Surguine would regularly and intentionally, on a nearly daily basis, mock Plaintiff's national

origin by calling Plaintiff such names as "Speedy Gonzales," and "Filipino," which Mr. Surguine well knew were not Plaintiff's proper name.

41.   On or about June 2009 Plaintiff was laid off from his role of Craft Team Supervisor role with Defendant, citing economic reasons for the employment layoff.

42.   Plaintiff was advised by the said Mr. Surguiine of said layoff during which time Mr. Surguine willfully and intentionally mispronounced Plaintiff's name and referred to him as "Pilipino" and "Speedy Gonzales."

43.   When Plaintiff inquired of Mr. Surguine why he, Plaintiff, had been selected for said layoff, Mr. Surguine stated to Plaintiff that he did not know the reason Plaintiff had been selected for employment layoff, which was false and untrue, as Mr. Surguine has recommended the elimination of Plaintiff's position to Defendant.

44.   Upon information and belief, Plaintiff alleges that at the time of said layoff, Defendant employed 12 Supervisors and retained 10 Supervisors, but did not retain Plaintiff.

45.   Upon information and belief, none of the 10 Supervisors whom Defendant retained during said layoff possessed a university degree in Mechanical Engineering, which Plaintiff had earned.

46.   Upon information and belief, none of the 10 Supervisors whom Defendant retained during said layoff were of Filipino national origin.

47.   Following said layoff, Plaintiff diligently sought other work but was not successful in finding other work having the same level of responsibilities and compensation as he had with Defendant.

48. Following said layoff, Defendant publicly posted jobs that it was seeking to fill with qualified applicants within Defendant's Operations and Maintenance Department where Plaintiff had been employed from in or about 1998 until said layoff in 2009.

49. In or about August 2009, Defendant posted the position of Trade Technician and Plaintiff timely applied for said position with Defendant as Plaintiff was well qualified for such position.

50. While Plaintiff's skills and abilities were well known to Defendant, as Plaintiff had previously worked for Defendant most recently in the role of Supervisor, Defendant's agent and manager, James Surguine, who was well aware of Plaintiff's Filipino national origin and qualifications, selected a lesser qualified candidate who was Caucasian without Filipino national origin to fill the posted position of Trade Technician thereby, intentionally and willfully, depriving Plaintiff equal employment opportunity because of his national origin .

51. In or about May 2013, Defendant posted the position Craft Team Supervisor and Plaintiff timely applied for this role as Plaintiff was well qualified for such position.

52. While Plaintiff's skill and abilities were well known to Defendant, as Plaintiff had previously worked for Defendant most recently in the role of Supervisor, Defendant's agent and manager, James Surguine, who was well aware of Plaintiff's Filipino national origin and qualifications, selected a lesser qualified candidate who was Caucasian without Filipino national origin to fill the posted position of Craft Team Supervisor thereby, intentionally and willfully, depriving Plaintiff equal employment opportunity because of his national origin.

53. In or about May 2013, Defendant posted the position Senior Operations and Maintenance Manager and Plaintiff timely applied for this role as Plaintiff was well qualified for such position.

54. While Plaintiff's skill and abilities were well known to Defendant, as Plaintiff had previously worked for Defendant, most recently in the role of Supervisor, Defendant's agent, James Surguine, who was well aware of Plaintiff's qualifications and Filipino national origin, selected a lesser qualified candidate who was Caucasian without Filipino national origin, to fill the posted position of Senior Operations and Maintenance Manager thereby, intentionally and willfully, depriving Plaintiff of equal employment opportunity because of his national origin.

55. In or about August 2013 Defendant posted the position Senior Operations and Maintenance Supervisor and Plaintiff timely applied for this role as Plaintiff was well qualified for such position.

56. While Plaintiff's skills and abilities were well known to Defendant, as Plaintiff had previously worked for Defendant, most recently in the role of Supervisor, Defendant's agent and manager, James Surguine, who was well aware of Plaintiff's qualifications and Filipino national origin, selected a lesser qualified candidate who was Caucasian without Filipino national origin, to fill the posted position of Senior Operations and Maintenance Supervisor thereby, intentionally and willfully, depriving Plaintiff of equal employment opportunity because of his national origin.

57. In refusing to hire Plaintiff into the open positions described above for which Plaintiff was better qualified than the lesser qualified candidates whom Defendant selected, Plaintiff was treated less favorably by Defendant than the lesser qualified, non-Filipino, successful candidates based upon Plaintiff's Filipino national origin over which he had no control.

58. In refusing to hire Plaintiff, because of his Filipino national origin, for open positions for which Plaintiff was well qualified, and by selecting lesser qualified non-Filipino candidates, Defendant caused Plaintiff significant economic and emotional harm.

## COUNT I
## Unlawful Employment Discrimination in Violation of 42 U.S.C. §2000e-2 (National Origin)

59. Plaintiff re-alleges and incorporates paragraphs 1 though 58 as if fully set forth herein.

60. 42 U.S.C. §2000e-2(a)(1) provides:

> It shall be an unlawful employment practice for an employer to fail or *refuse to hire* or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or *national origin. (Emphasis added.)*

61. Plaintiff is a member of a protected class, Filipino national origin, under the statute and Defendant is an employer under the statute.

62. In refusing the hire Plaintiff, Defendant willfully and intentionally discriminated against Plaintiff because of his Filipino national origin by hiring lesser qualified non-Filipino candidates into roles for which Plaintiff was more qualified than the non-Filipino candidates.

63. Other candidates similarly situated to Plaintiff did not suffer the same intentional and willful discriminatory treatment by Defendant based upon national origin as did Plaintiff.

64. As a direct and proximate cause of the intentionally unlawful and discriminatory employment actions by Defendant, Plaintiff has suffered substantial damages, including loss of gainful employment, loss of earnings and income, loss of employment benefits, emotional distress and damage to his reputation.

65. Plaintiff has retained the services of the undersigned counsel and has incurred attorneys' fees, costs and expenses and is obligated to pay his attorneys a reasonable fee for their services.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court declare Defendant to be in violation of Plaintiff's rights as protected by Title VII of the Civil Rights Act of 1964; award Plaintiff back pay and the value of lost employment benefits; award Plaintiff front pay or reinstatement; award Plaintiff damages for mental anguish, emotional distress and loss of reputation; award Plaintiff punitive damages, award Plaintiff his attorneys' fees and costs; and grant other and grant other further relief as this Court deems just and proper.

## COUNT II
## Unlawful Employment Discrimination in Violation of §760.10(1)(a), Florida Statutes (National Origin)

66. Plaintiff re-alleges and incorporates paragraphs 1 through 58 as if fully set forth herein.

67. Section 760.10(1)(a), Florida Statutes, provides:

> It is an unlawful employment practice for an employer to discharge or to fail or *refuse to hire* any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, *national origin*, age, handicap, or marital status. (*Emphasis added*)

68. Plaintiff is a member of a protected class, Filipino national origin, under the statute and Defendant is an employer under the statute.

69. In refusing to hire Plaintiff, Defendant acted intentionally with malice and reckless disregard for Plaintiff's rights under the FCRA by hiring lesser qualified non-Filipino candidates into roles for which Plaintiff was more qualified than the non-Filipino candidates.

11

70. Other candidates similarly to Plaintiff did not suffer the same intentional and willful discriminatory treatment based upon national origin as did Plaintiff.

71. As a direct and proximate result of these unlawful employment actions by Defendant, Plaintiff has suffered substantial damages, including loss of gainful employment, loss of earnings and income, loss of benefits, emotional distress and damaged reputation.

72. Plaintiff has retained the services of the undersigned counsel and has incurred attorneys' fees, costs and expenses and is obligated to pay his attorneys a reasonable fee for their services. .

WHEREFORE, Plaintiff respectfully requests that this Honorable Court declare Defendant to be in violation of Plaintiff's rights as protected by the FCRA; award Plaintiff back pay and the value of lost employment benefits; award Plaintiff front pay or reinstatement; award Plaintiff damages for mental anguish, emotional distress, and loss of reputation; award Plaintiff punitive damages, award Plaintiff her attorneys' fees and costs; and grant other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

/s/Richard S. Larson
RICHARD S. LARSON, ESQ.
Florida Bar No.: 096261
Rick Larson Law
310 South Dillard Street, Suite 100
Winter Garden, FL 34787
Telephone: (407) 877-7115
Facsimile: (404 877-6970
rickslarsonlaw@gmail.com
Attorney for Plaintiff

/s/ Ronald W. Sikes
RONALD W. SIKES, ESQ.
Florida Bar No.: 231428
Sikes Law Group, PLLC
310 South Dillard Street, Suite 120
Winter Garden, FL 34787
Primary Email:rsikes@sikeslawgroup.com
              abent@sikeslawgroup.com
Secondary:  mrosales@sikeslawgroup.com
Telephone:   (407) 877-7115
Facsimile No.: (407) 877-6970
Attorneys for Plaintiff